IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DRAEGER MEDICAL SYSTEMS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MY HEALTH, INC., ) <br> ) <br> Defendant. ) | Civ. No. 15-248-SLR |

**MEMORANDUM**

At Wilmington this 1st day of July, 2015, having heard argument on, and reviewed the papers filed in connection with, defendant Draeger Medical Systems, Inc.'s ("Draeger") motion for default judgment and plaintiff My Health, Inc.'s ("My Health") motion to set aside the clerk's entry of default and motion for extension of time to answer; My Health's motion (D.I. 13) will be granted and Draeger's motion (D.I. 8) is denied as moot, for the reasons that follow:

1. **Procedural background.** On March 19, 2015, Draeger, a Delaware corporation with its principal place of business in Telford, Pennsylvania, filed this declaratory judgment action against My Health, a Delaware corporation with its principal place of business in Plano, Texas, alleging non-infringement and invalidity of U.S. Patent No. 6,612,985 ("the '985 patent"). (D.I. 1) The '985 patent, issued on September 2, 2003, discloses technology that assists healthcare providers in remotely monitoring and treating patients. (D.I. 15 at ¶ 5) On March 27, 2015, Draeger served My Health's registered agent, National Corporate Research, Ltd., triggering a deadline to respond to the complaint on or before April 17, 2015. (D.I. 5) After My Health did not

respond to Draeger's complaint in a timely manner and did not seek leave of court to extend its deadline (D.I. 11 at ¶ 4), on April 21, 2015, Draeger requested the clerk of court to enter default as to My Health under Federal Rule of Civil Procedure 55, and the clerk did so on April 24, 2015. (D.I. 6-7) On April 24, 2015, a copy of the entry of default was mailed to My Health's registered agent. (D.I. 9) On April 28, 2015, Draeger filed the pending motion for default judgment. (D.I. 8) The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331[1] and 1338(a).

2. **Factual background.** On or about February 19, 2015, Patent Licensing Agent ("PLA"), acting on behalf of My Health, sent a letter to Drägerwork AG, Draeger's German parent, stating that Draeger's "Infinity M300 system employs the technology claimed and disclosed in [the '985 patent]." (D.I. 1 at ¶ 9) The letter further declared that "[t]he [p]atent requires a license if [plaintiff] intend[s] to continue to sell [the Infinity M300 system]." (Id. at ¶ 10) It also stated that My Health was "interested in reaching a direct, negotiated (and without litigation) licensing agreement for all of [Draeger's] uses of the My Health Patent under [Draeger's] brand names and would like to discuss this matter with [Draeger]." (D.I. 15 at ¶ 8) Draeger opted to file the present action instead of discussing a license. (Id. at ¶ 10)

3. According to My Health, its general counsel, Vincent Aiello ("Aiello"), was suffering from an undiagnosed neurological condition between the time service of process was effectuated and the deadline to respond to the summons. My Health alleges that his symptoms, including double vision and severe loss of equilibrium, precluded him from performing his tasks as general counsel. My Health is uncertain

---

[1] My Health has stated that it plans to contest this court's subject matter jurisdiction.

2

whether its registered agent forwarded the complaint, and Aiello claims to have no memory of having seen the complaint at any time. (D.I. 15 at ¶¶ 11-21)

4. **Standard.** The entry of default, the granting of default judgment, and the setting aside of default are provided for in Federal Rule of Civil Procedure 55, which states in relevant part:

> (a) Entering a Default. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.
>
> (b) Entering a Default Judgment.
>
> (1) By the Clerk. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiffs request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing . . . .
>
> (2) By the Court. In all other cases, the party must apply to the court for a default judgment . . . . If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing . . . .
>
> (c) Setting Aside a Default or a Default Judgment. The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b).

Fed. R. Civ. P. 55. "In general, the entry of default and default judgment are disfavored because they prevent a plaintiff's claims from being decided on the merits." *Thompson v. Mattleman, Greenberg, Shmerelson, Weinroth & Miller*, Civ. No. 93–2290, 1995 WL 321898, at *3 (E.D.Pa. May 26, 1995) (citing *Medunic v. Lederer*, 533 F.2d 891, 893–94 (3d Cir.1976)); *accord United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir.1984) (requiring courts to avoid default judgment in doubtful cases).

3

5. "[B]etween the extremes of repeated contumacious conduct and innocent procedural error are the manifold instances of neglect and inadvertence that require trial courts to weight the equities of the situation and the need for the efficacious resolution of controversies." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984). Judgment, therefore, "does not lend itself to a rigid formula." *Id.* In weighing the equities presented in the case, three factors inform the court's analysis: "(1) prejudice to the plaintiff if default is [set aside], (2) whether the defendant appears to have a [meritorious] defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *$55,518.05 in U.S. Currency*, 728 F.2d at 195; *see also International Broth. Of Elec. Workers, Local Union No. 313 v. Skaggs*, 130 F.R.D. 526, 529 n. 1 (D. Del. 1990) (holding that the Third Circuit applies the same standard for default in appearance as for default judgment). "It is well settled in [the Third Circuit] that the entry of a default judgment is left primarily to the discretion of the district court." *Hritz*, 732 F.2d at 1180 (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)); *see also Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 627-28 (D. Del. 2007). Although the weighing of each factor is discretionary, the court must be mindful of the Third Circuit's preference for allowing claims to be heard on their merits. *See Thompson*, 1995 WL 321898, at *3.

6. **Prejudice to Draeger.** Draeger argues that it will be prejudiced if the default is set aside, given that it is a developing company and the "specter of litigation" is detrimental to its sales, market share, business decisions, and investment from third parties. (D.I. 10 at 3; D.I. 18 at 9) The court concludes, however, that the above

4

reasoning is more suited to establishing subject matter jurisdiction[2] than precluding litigation on the merits.

7. **Meritorious defense.** In the context at bar, where subject matter jurisdiction has not been vetted and it would be Draeger's burden to invalidate the '985 patent by clear and convincing evidence, the court finds this factor inapplicable. Therefore, the court declines to assign weight to either party in this regard.

8. **Culpable conduct.** "For the purposes of Rule 55, culpable conduct is 'dilatory behavior that is willful or in bad faith.'" *Dizzley v. Friends Rehab. Program, Inc.*, 202 F.R.D. 146, 148 (E.D. Pa. 2001) (quoting *Gross v. Stereo Component Sys.*, 700 F.2d 120, 124 (3d Cir. 1983)). Draeger argues that My Health's failure to respond amounts to "reckless disregard for the authority of this court" (D.I. 18 at 2), citing the following: (a) My Health's failure to respond to the summons and My Health's failure to conduct an investigation into whether the summons was forwarded (*id.* at 3); (b) My Health's "extensive" prior litigation of the '985 patent (*id.* at 3-4), including complaints against at least 24 companies involved in the health care industry, alleging infringement of the '985 patent (D.I. 1 at ¶ 13), and five declaratory judgment actions filed against My Health, seeking declarations of non-infringement and/or invalidity of the '985 patent (*Id.* at ¶ 14); (c) My Health's April 14, 2015 submission of a document in an ongoing Texas litigation, without any evidence as to whether Aiello or another member of the legal team submitted or prepared said document (D.I. 18 at 4); (d) My Health's lack of

---

[2] *See, e.g., MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (holding that an actual controversy exists where "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment").

5

internal procedures to account for Aiello's infrequent and random neurological flare-ups (*id.* at 5); and (e) a photograph of a smiling Aiello taken at a book signing one week **after** the complaint response deadline, apparently discounting the seriousness of Aiello's alleged condition and possible change in symptoms over a seven day period (D.I. 19, ex. C). Draeger's citations, however, do not support a conclusion that the conduct at issue was willful or in bad faith or amounted to repeated reckless disregard. My Health submitted that Aiello's condition left him with double vision and loss of equilibrium, rendering communication with outside counsel "significantly difficult." (D.I. 14 at 11) Moreover, Draeger rejected My Health's request for a short extension even when given an explanation of the extenuating medical circumstances. (D.I. 16 at ¶ 5-6)

9. **Conclusion.** The Third Circuit disfavors entry of default judgment, explaining that "[d]elay in realizing the satisfaction on a claim rarely serves to establish the degree of prejudice sufficient to prevent the opening of a default . . . entered at an early stage of the proceeding." *Mike Rosen & Associates, P.C. v. Omega Builders, Ltd.*, 940 F. Supp. 115, 118 (E.D. Pa. 1996) (citing *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656-57 (3d Cir. 1982)). The court concludes that the equities of record weigh in favor of setting aside the entry of default, denying the entry of a default judgment, and granting My Health an extension of time to answer. An appropriate order shall issue.

United States District Judge