# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DRAEGER MEDICAL SYSTEMS, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | C.A. No. 1:15-cv-00248-SLR |
| MY HEALTH, INC., | ) ) | |
| Defendant. | ) ) ) ) ) ) | |

\* \* \* \* \* \* \*

**DEFENDANT MY HEALTH, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO RULE 12(B)(1)**

Dated: July 22, 2015

George Pazuniak
O'Kelly Ernst & Bielli, LLC
901 N. Market St., Suite 1000
Wilmington, DE 19801
Tel: 302-478-4230
Fax: 302-295-2873
GP@del-iplaw.com

*Attorney for Defendant
My Health, Inc.*

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................... 1

II.    FACTUAL BACKGROUND ........................................................................................ 1

III.   ARGUMENT .................................................................................................................. 3

    A. The Court Lacks Subject Matter Jurisdiction ................................................................ 3

        1. Legal Standard For Case or Controversy ................................................................. 3

            a. Prior to it filing the complaint Draeger did not have a reasonable apprehension of suit as My Health nor PLA had not made any direct or indirect contact with Draeger, let alone a threat of litigation. ................................4

            b. The February 19 Letter Alone Does not Create an Actual Case or Controversy within the meaning of the Declaratory Judgment Act, and therefore Subject Matter Jurisdiction cannot be sustained. ...................................6

            c. Multiple lawsuits sustained by My Health cannot create subject matter jurisdiction. ...........................................................................................................10

    B. Public Policy Dictates That This Court Should Decline Jurisdiction ........................... 11

IV.    CONCLUSION ............................................................................................................. 12

## TABLE OF CONTENTS

**Cases**

Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,
846 F.2d 731, 6 USPQ2d 1685 (Fed.Cir.1988) ......................................................... 11

BP Chemicals Ltd. v. Union Carbide Corp.,
4 F.3d 975 (Fed.Cir.1993) ......................................................... 12

Capo, Inc. v. Dioptics Med. Products, Inc.,
387 F.3d 1352 (Fed. Cir. 2004) ......................................................... 12

EMC Corp. v. Norand Corp.,
89 F.3d 807 (Fed. Cir. 1996) ......................................................... 12

Flex Products, Inc. v. Valley Slurry Seal Co.,
2010 WL 2509932 (S.D. Cal. 2010) ......................................................... 5, 8

Innovative Therapies, Inc. v. Kinetic Concepts, Inc.,
599 F.3d 1377 (Fed. Cir. 2010). ......................................................... 8

Matthews Int'l Corp. v. Biosafe Eng'g, LLC,
695 F.3d 1322 (Fed. Cir. 2012) ......................................................... 4

Md. Cas. Co. v. Pac. Coal & Oil Co.,
312 U.S. 270 (1941) ......................................................... 4

MedImmune, Inc. v. Genentech, Inc.,
549 U.S. 118 (2007) ......................................................... 4, 5

Medtronic, Inc. v. Mirowski Family Ventures, LLC,
134 S. Ct. 843 (2014) ......................................................... 4

Microsoft Corp. v. WebXchange Inc.,
2009 WL 3534845 (D. Del. Oct. 30, 2009) ......................................................... 5

Panavise Products, Inc. v. Nat'l Products, Inc.,
306 F. App'x 570 (Fed. Cir. 2009) ......................................................... 11

Prasco, LLC v. Medicis Pharm. Corp.,
537 F.3d 1329 (Fed. Cir. 2008) ......................................................... 8

SanDisk Corp. v. STMicroelectronics, Inc.,
480 F.3d 1372 (Fed.Cir.2007) ......................................................... 8

*United States v. Arnold,*
678 F. Supp. 1463 (S.D. Cal 1988)..........................................................................................5

*W. Interactive Corp. v. First Data Res., Inc.,*
972 F.2d 1295 (Fed. Cir. 1992) ............................................................................................11

**Statutes**

28 U.S.C §§ 1 ............................................................................................................................6
28 U.S.C. §§ 2201-02 ...............................................................................................................8
35 U.S.C. §§ 1 *et seq*...............................................................................................................3
35 U.S.C. §§ 1 ..........................................................................................................................3

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................................................5

## I.  INTRODUCTION

In its complaint, Draeger Medical Systems, Inc. ("Draeger") seeks declaratory judgment of non-infringement against My Health, Inc. ("My Health"). (D.I. 1). Draeger seeks a judicial declaration that it is entitled to blanket and permanent, retroactive and prospective, immunity under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq*. It also seeks to invalidate a valid U.S. patent. However, this Court lacks subject matter jurisdiction over Draeger's claims as no case or controversy exists between the parties.

Draeger seeks a declaration for non-infringement of My Health's U.S. Patent No. 6,612,985 (the '985 patent") but fails to identify actions that are sufficient to give rise to an actual case or controversy. Draeger roots its opinion that an actual controversy exists entirely on (i) a single letter that was sent by a non-lawyer agent offering to discuss a licensing arrangement, received by a company in Germany; and (ii) the existence of third-party lawsuits filed by My Health unrelated to Draeger. Dkt. No. 1 ¶¶ 9-15.  The letter was clear that the discussions were intended to be outside of the context of litigation. Extending Article III standing to circumstances such as these would essentially do away-with the "case or controversy" requirement, and would have a chilling effect on legitimate attempts to invite non-litigation discussions.  Draeger's complaint fails to satisfy the requirements necessary to support federal subject matter jurisdiction, and the case should be dismissed.

## II.  FACTUAL BACKGROUND

PLA is a separate party to this action, specializing in research and sales of third party patents. Declaration of Vincent Aiello ("Aiello Dec.") ¶ 3. Patent Licensing Alliance ("PLA") takes a collaborative approach and assists smaller entities with licensing and selling their intellectual property to larger, more established entities that employ or would like to employ the

patented technology. Aiello Dec. ¶ 4. My Health engaged PLA to identify companies whose products and services may benefit from the technology covered by the '985 Patent. Aiello Dec. ¶ 5.

On February 19, 2015, PLA sent a letter to Stefan Dräger explaining that PLA's research team identified the Infinity M300 system as one it *believes* could benefit from the patented technology. ("Our research group and legal team have thoroughly reviewed the Infinity M300 system and believe that it utilizes the technology claimed and disclosed in the Remote Monitoring Patient.") Aiello Dec. ¶ 8. The letter unequivocally states that PLA's intent was to participate in licensing negotiations, not to litigate: "We are interested in reaching a direct, negotiated (**and without litigation**) licensing arrangement for all of your uses of the My Health Patent under your brand names and would like to discuss this matter with you." Aiello Dec. ¶ 9. (emphasis added). The February 19 letter was an attempt to explore a business relationship with Draeger; it was not a cease-and-desist letter. Aiello Dec. ¶ 7. And, it was not sent by a law firm. Neither PLA nor My Health has a history of filing lawsuits against potential business partners or licensees. Aiello Dec. ¶ 11. Stefan Dräger, to whom the letter was addressed, never contacted My Health. Aiello Dec. ¶ 14. In previous court filings, Draeger stated it received no communication whatsoever from My Health before filing its lawsuit. D.I. ¶ 18, p. 2 ("[T]he accused product is made in the United States by Draeger, *an entity My Health ignored altogether* right up until the day default was entered.") (emphasis added). In addition, Draeger never attempted to contact My Health prior to filing its Complaint, despite purportedly knowing the names and addresses of My Health's CEO and counsel of record in other active lawsuits. Dkt. No. 1 ¶¶ 5, 10; *see also* Aiello Dec. ¶ 14.

Courts are not allowed to issue advisory opinions, and under recent case law, courts may only entertain declaratory judgment actions where the plaintiff has shown that a substantial

controversy exists between the plaintiff and defendant "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007). Because the plaintiff and defendant had absolute no communication with one another whatsoever before the filing of this lawsuit, a fact Draeger admits, Draeger cannot show that the parties are engaged in a substantial controversy of sufficient immediacy and reality to warrant this Court sustaining this action.

### III. ARGUMENT

#### A. The Court Lacks Subject Matter Jurisdiction

#### 1. Legal Standard For Case or Controversy

Rule 12(b)(1) provides that a court may dismiss a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Because the plaintiff invokes a court's jurisdiction, the plaintiff bears the burden of establishing the existence of subject matter jurisdiction. *Matthews Int'l Corp. v. Biosafe Eng'g, LLC*, 695 F.3d 1322, 1327-28 (Fed. Cir. 2012). The Declaratory Judgment Act does not provide an independent basis of subject matter jurisdiction. *Medtronic, Inc. v. Mirowski Family Ventures, LLC,* 134 S. Ct. 843, 848 (2014). Article III of the U.S. Constitution prohibits federal courts from issuing advisory opinions, therefore courts may not entertain disputes except where "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. at 127 quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273 (1941)). Absent a definite and concrete dispute, there is no subject matter jurisdiction. *Id.* at 126.

Additionally, the Court's exercise of jurisdiction over declaratory judgment actions is discretionary, not mandatory, and this Court may decline to exercise such jurisdiction even if the

requirements for subject matter jurisdiction are satisfied. *Microsoft Corp. v. WebXchange Inc.,* 2009 WL 3534845, at *3 (D. Del. Oct. 30, 2009); *see also MedImmune,* 549 U.S. at 127 ("The Declaratory Judgment Act provides that a court *'may* declare the rights and other legal relations of any interested party,' not that it *must* do so."). "In exercising its discretion, 'the court must make a reasoned judgment whether the investment of time and resources will be worthwhile.'" *Flex Products, Inc. v. Valley Slurry Seal Co.,* 2010 WL 2509932, at *3-4 (S.D. Cal. 2010).

"In the declaratory judgment context, the Supreme Court has admonished that '[t]he disagreement *must not be nebulous* or contingent *but must have taken on fixed and final shape* so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them.'" *United States v. Arnold,* 678 F. Supp. 1463, 1465-66 (S.D. Cal 1988) (emphasis added) (citation omitted). Moreover, because Draeger seeks a declaration under the Patent Laws of the United States, it must additionally prove that this declaratory judgment action arises from a justiciable case and controversy related to a patent. 28 U.S.C §§ 1 *et seq.*

> **a.    Prior to it filing the complaint Draeger did not have a reasonable apprehension of suit as My Health nor PLA had not made any direct or indirect contact with Draeger, let alone a threat of litigation.**

Neither Draeger's actions nor My Health's actions give rise to a substantial controversy that would support subject matter jurisdiction in this case. While the Supreme Court rejected the reasonable apprehension of suit test as the sole test for jurisdiction, reasonable apprehension of a lawsuit still remains relevant to the declaratory judgment analysis. *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1336 (Fed. Cir. 2008) (quoting *Caraco Pharm. Labs. Ltd. v. Forest Labs.,* 527 F.3d 1278, 1291 (Fed.Cir.2008)). Following *MedImmune,* proving a reasonable apprehension of suit is one of multiple ways that a declaratory judgment plaintiff can

satisfy the more general totality of the circumstances test to establish that an action presents a justiciable Article III controversy. *Id.*

In *West Interactive Corp. v. First Data Res., Inc.* the court found that the plaintiff did not have reasonable apprehension of a patent infringement suit. 972 F.2d 1295 (Fed. Cir. 1992). After hearing from a third party that the defendant was allegedly claiming the plaintiff had infringed on its patent, the plaintiff filed a declaratory judgment action seeking non-infringement of the defendant's telephonic interface control systems patent. The court commented that "[n]ot only is there no allegation that First Data authorized such communication by Call Interactive employees, but there also is no allegation that First Data had any communication whatsoever with West with regard to the patents-in-suit…" *Id.* at 1296. There had been no direct or indirect contact between the plaintiff and defendant. The court concluded "this record does not contain enough evidence of conduct of First Data or conduct attributable to First Data to arouse in West a reasonable apprehension of a lawsuit. . . . West has not shown that First Data undertook any conduct sufficient to support West's alleged apprehension of litigation." *Id.* at 1297.  The court found that even though the patent holder had filed infringement suits against three other entities, it was not enough to rise to the level of a reasonable apprehension of litigation. *Id.* at 1295.

Like *West*, Draeger has not based its declaratory judgment action on a reasonable apprehension of a lawsuit by My Health. Draeger did not engage in any conversation with My Health or its representatives before filing this lawsuit nor did it attempt to do so. My Health did not directly contact Draeger or communicate to them in such a way as to indicate that a substantial controversy existed between the parties. Draeger concedes that "My Health [allegedly] created the controversy by sending a pre-litigation binder directly to Stefan Dräger, the CEO of Drägerwerk AG in Germany."). Draeger admits that it received no communication

5

whatsoever from My Health before filing its lawsuit. D.I. ¶ 18, p. 2 ("[T]he accused product is made in the United States by Draeger, an entity My Health ignored altogether right up until the day default was entered.").

In *GAF Bldg. Materials Corp. v. Elk Corp. of Dallas* the court found that "later events may not create jurisdiction where none existed at the time of filing." 90 F.3d 479, 483 (Fed. Cir. 1996) (case dismissed for lack of subject matter jurisdiction) (quoting *Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 635 (Fed. Cir. 1991)). The Federal Circuit further explained that "[t]he presence or absence of jurisdiction must be determined on the facts existing at the time the complaint under consideration was filed." *Id.* (quoting Arrowhead *Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 734 n. 2, 6 USPQ2d 1685, 1687 n. 2 (Fed. Cir. 1988)).

Similarly, Draeger should not be able to base subject matter jurisdiction on facts in existence after the time of filing. As stated previously, Draeger admitted in previous representations to this court that its suit could not have been based on communication with My Health prior to its filing of the complaint because, as Draeger claims, My Health "ignored [Draeger U.S.] altogether right up until the day default was entered." D.I. ¶ 18, p. 2 Therefore, this Court should not exercise jurisdiction over the parties.

> **b.      The February 19 Letter Alone Does not Create an Actual Case or Controversy within the meaning of the Declaratory Judgment Act, and therefore Subject Matter Jurisdiction cannot be sustained.**

Draeger's Complaint fails to meet both Article III's case or controversy requirement as defined in the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02 and the Patent Act's subject matter jurisdiction requirement under Section 1338. Draeger's request for an advisory opinion should be dismissed on these two grounds. After the Supreme Court's decision in *MedImmune*, the Federal Circuit articulated a totality of the circumstances test to replace the reasonable

apprehension standard to determine whether a Court may exercise jurisdiction in a declaratory judgment action.

*TSMC Tech., Inc. v. Zond, LLC,* 2015 WL 661364, at *3 (D. Del. Feb. 13, 2015). "[A] case or controversy must be based on a real and immediate injury or threat of future injury that is caused by the defendants—an objective standard that cannot be met by a purely subjective or speculative fear of future harm." *Id* (quoting *Prasco,* 537 F.3d at 1339). "[T]he alleged injury at the root of most justiciable declaratory judgment controversies in the patent context is a restraint on the free exploitation of non-infringing goods, or an imminent threat of such restraint." *Prasco, LLC v. Medicis Pharm. Corp.,* 537 F.3d 1329, 1338-39 (Fed. Cir. 2008). The Federal Circuit found that a party's history of litigation against others coupled with an informal threat of patent litigation toward the plaintiff does not establish an actual, judicial controversy. *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.,* 599 F.3d 1377, 1382 (Fed. Cir. 2010).

In *Innovative Therapies,* a company threatened with patent litigation petitioned the court for a declaratory judgment of non-infringement against the patentee. *Id.* at 1379. The company argued there was an actual controversy based upon the patentee's litigation and patent enforcement history coupled with a phone call by the patentee's CEO unequivocally stating that he would "aggressively go after [plaintiff] … "100% no doubt about it" if plaintiff's product even "scratches the surface" of patentee's patented claims as there was "no way to coexist" peacefully. *Id.* at 1380-81. Despite such interactions, the district court dismissed the case for lack of subject matter jurisdiction because such interactions did not constitute "threat of suit." *Id.* at 1381. The Federal Circuit agreed, holding that "the indirection reflected in this conversation did not produce a controversy of such 'immediacy and reality' as to require the district court to accept declaratory

jurisdiction." *Id.* at 1382 (citing *SanDisk Corp. v. STMicroelectronics, Inc.,* 480 F.3d 1372, 1378 (Fed.Cir.2007)).

Like *Innovative Therapies,* this Court lacks jurisdiction to hear this case under the Declaratory Judgment Act because a patentee's litigation history coupled with its third party licensing agent's single letter do not give rise to a judicial claim. The only two reasons Draeger sets forth for invoking this Court's jurisdiction are insufficient for this Court exercising jurisdiction: (1) My Health's history of litigation against other parties and (2) a single letter sent by PLA to Stefan Dräger—third parties to this action—requesting further discussions about My Health offering a license to U.S. Patent No. 6,612,985. (Dkt. No. 1 ¶¶ 9-15).

The letter sent to Draeger was not a cease and desist sent by My Health but rather a letter written by My Health's agent, PLA, to enter into a business relationship. Aiello Dec. ¶ 7. My Health does not have a history of litigation against potential licensees. Aiello ¶11. While My Health conducts thorough reviews of every defendant in its patent infringement actions to determine whether it employs the patented technology, PLA conducts reviews of potential licensing candidates that are separate and distinct from My Health's litigation and patent infringement research. *Id.* at ¶ 10. Although Draeger's complaint references the February 19 Letter sent by PLA, it failed to incorporate the entire letter into its complaint because it knew that the language of the letter could not establish an actual case or controversy. "We are interested in reaching a direct, negotiated (**and without litigation**) licensing arrangement for all of your uses of the My Health Patent under your brand names and would like to discuss this matter with you." (emphasis added). Aiello Dec. ¶ 9.

Unlike the patentee in *Innovative Therapies* who said a lawsuit was 100% likely and the two parties could not coexist if the competitors' products used the patented technology, PLA

expressed to Draeger that litigation was not its intention and that the companies should enter into a peaceful business relationship. Nowhere in the February 19 Letter does PLA ask or demand that Draeger stop making its product. Aiello Dec. ¶ 7. PLA does claim to "believe that [the Infinity M300 System] utilizes the technology claims and disclosed in the Remote Monitoring Patent." Aiello Dec. ¶ 8. However My Health's history of patent enforcement does not include patent infringement litigation with companies with which it has entered into a business relationship or with which it has entered into negotiations. Aiello Dec. ¶11. In many instances, such potential licensees have contacted PLA with additional information previously unavailable to PLA, which led both parties to believe that a license was unnecessary. Aiello Dec. ¶ 12. Further still, some companies have contacted PLA wanting to negotiate a license of the '985 patent not because the company's current offerings employed the technology but because they wanted to employ the technology in the future. Aiello Dec. ¶ 13. While PLA did "believe" that Draeger's product employed the technology under the '985 Patent, the February 19 Letter invited additional discussion from Draeger that Draeger refused. Aiello Dec. ¶¶ 5, 8, 14.

Therefore, Draeger could not have had a reasonable apprehension of an imminent lawsuit based on the language of the letter and My Health's history of dealing with its potential licensees. Like the patentee in *Innovative Therapies* whose actions were much more heightened than in the present case, My Health's motion to dismiss should be granted because no case or controversy exists. Unmoored from an actual, concrete dispute, Draeger seeks an unqualified declaration that it does not infringe the '985 patent before any threat of suit for patent infringement. In sum, Draeger is not entitled to an advisory opinion in the form of its request for an opinion about the applicability of an affirmative defense.

c.      **Multiple lawsuits sustained by My Health cannot create subject matter jurisdiction.**

Even though, combined with additional actions taken by the defendant, litigation history may sometimes be used to create reasonable apprehension of a lawsuit, a patent owner's willingness and capacity to enforce its patent rights cannot be the lynchpin to establishing subject matter jurisdiction. *Panavise Products, Inc. v. Nat'l Products, Inc.,* 306 F. App'x 570, 573 (Fed. Cir. 2009); *see also Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 737, 6 USPQ2d 1685, 1690 (Fed.Cir.1988) and *W. Interactive Corp. v. First Data Res., Inc.*, 972 F.2d 1295, 1298 (Fed. Cir. 1992).

In *Panavise Products, Inc. v. Nat'l Products, Inc.* the Federal Circuit held an alleged infringer had not shown a sufficient actual controversy even though the patent holder's prior conduct was litigious. 306 F. App'x at 573. The court recognized that while prior litigious conduct is one factor, there are many other circumstances that must also be considered under the totality of the circumstances test. *Id.* at 573 (quoting *Prasco,* 537 F.3d at 1341). The court held that "the fact that NPI routinely enforces its patent rights, when viewed under the totality of the circumstances in this case, is insufficient to create an actual controversy and establish subject matter jurisdiction." *Id.* at 573-74.

Like *Panavise*, the fact that My Health enforces its patent rights does not create a sufficient actual controversy when viewed under the totality of circumstances. My Health enforces its patent rights directly through litigation. PLA, a separate entity, researches potential business associates and licensees for current and future development. My Health does not have a history of filing lawsuits against potential business partners with which it has entered into licensing negotiations. Furthermore, My Health's litigation history alone is insufficient, under the totality of the circumstances test, to confer subject matter jurisdiction on this Court.

## B.  Public Policy Dictates That This Court Should Decline Jurisdiction

The purpose of the declaratory action is to allow a party "who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side." *Capo, Inc. v. Dioptics Med. Products, Inc.*, 387 F.3d 1352, 1354-55 (Fed. Cir. 2004) (quoting *BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 977 (Fed.Cir.1993)). Draeger was not at legal risk because of an unresolved dispute nor has it indicated to the Court how its belief of such risk is reasonable. But even if this Court recognizes that there may be an actual controversy between Draeger and My Health, the Court may in its discretion decide to dismiss the case in the interest of public policy in order to encourage dialogue—or at least a single communication—between parties before going to court. *EMC Corp. v. Norand Corp.*, 89 F.3d 807 (Fed. Cir. 1996).

The Federal Circuit continues to recognize that even if there is an actual controversy, a court may in its discretion, decline to exercise jurisdiction when in the public interest, declaratory proceedings should be preserved for cases whose objectives fall in line with those of a declaratory proceeding. *EMC Corp. v. Norand Corp.*, 89 F.3d 807 (Fed. Cir. 1996) (rev'd on other grounds); *see also Capo, Inc. v. Dioptics Med. Products, Inc.*, 387 F.3d 1352, 1355 (Fed. Cir. 2004) (finding that the case "was brought in order to gain an advantage in licensing negotiations, and deemed that an improper purpose.").

In *EMC*, the court exercised its discretion to dismiss a declaratory judgment action. *Id.* at 815. The plaintiff and defendant had been involved in patent negotiations for a sale or license of the defendant's patents up until a complaint was filed. The district court declined jurisdiction because "allowing the declaratory judgment action to proceed would 'creat[e] an incentive structure that is inconsistent with the public interest in preserving declaratory proceedings for cases closer to the

11

central objectives of declaratory proceedings…'" *Id*. at 814.

Commenting that even the plaintiff's senior counsel had called the complaint "'merely a defensive step' and that EMC 'would like to continue to discuss with you all the options hopefully in a more meaningful manner over the near term'" the Federal Circuit agreed with the district court and declined to extend jurisdiction because the case was "not one that furthered the objectives of the Declaratory Judgment Act." *Id*. at 815.

Similarly, the declaratory judgment sought by Draeger should be dismissed because this case is not in the public interest nor does it further the objectives of the Declaratory Judgment Act. Draeger made no attempt to contact My Health or PLA to even inquire about the nature of the letter or My Health's business purposes or motive. Instead, Draeger prematurely jumped the gun, assuming many incorrect things about the letter with respect to My Health's motives and business dealings that could have been cleared up had Draeger simply contacted PLA or My Health. At the time the complaint was filed, Draeger was not at legal risk because of an unresolved dispute with My Health. Nor was Draeger under any reasonable apprehension of litigation because My Health was solely interested in creating/establishing a business licensing dialogue with Draeger. Therefore, this Court should decline to exercise jurisdiction in this matter.

## IV. CONCLUSION

For the reasons stated above, this Court should exercise its discretion to dismiss this case for lack of subject matter jurisdiction.

Respectfully Submitted,

12

DATED this 22nd day of July, 2015.

*Of counsel*:

Pia Anderson Dorius Reynard & Moss, LLC
222 S. Main Street, Suite 1830
Salt Lake City, Utah 84101-2194
Telephone: 801-350-9000

*/s/ George Pazuniak*
George Pazuniak
O'Kelly Ernst & Bielli, LLC
901 N. Market St., Suite 1000
Wilmington, DE 19801
Tel: 302-478-4230
Fax: 302-295-2873
GP@del-iplaw.com

*Attorneys for Defendant*