IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DRAEGER MEDICAL SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civ. No. 15-248-SLR |
| MY HEALTH, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM ORDER**

At Wilmington this 3rd day of March 2016, having considered defendant My Health, Inc.'s motion to dismiss for lack of subject matter jurisdiction and the papers submitted therewith;

IT IS ORDERED that the motion (D.I. 24) is denied, as follows:

1. **Background**. Draeger Medical Systems, Inc. ("Draeger") filed this action on March 19, 2015 against My Health, Inc. ("My Health") seeking a declaratory judgment of non-infringement and invalidity of U.S. Patent No. 6,612,985 (the "'985 patent"). (D.I. 1) The '985 patent, issued on September 2, 2003, is entitled "Method and System for Monitoring and Treating a Patient." (*Id.* at ¶ 16)

2. Draeger is a Delaware corporation with operations in Massachusetts and Pennsylvania. (*Id.* at ¶ 2) Through its Infinity M300 system, Draeger provides diagnostic ambulatory devices that help patients self-manage and improve their health through technology. (*Id.* at ¶ 8) My Health is a non-practicing entity incorporated in Delaware and headquartered in Plano, Texas. (*Id.* at ¶ 3; D.I. 26 at 2) My Health

engaged Patent Licensing Alliance ("PLA"), a non-party, to identify and solicit companies whose products and services may benefit from the technology covered by the '985 patent. (D.I. 25 at 2)

3. In February 2015, the Chief Executive Officer of Draeger received a letter from PLA stating that its "research group and legal team have thoroughly reviewed the Infinity M300 system and believe that it utilizes the technology claimed and disclosed in the ['985 patent]." (D.I. 27-4) The letter explained that due to "improper use without a license, My Health has been enforcing its intellectual property rights."[1] (*Id.*) Accordingly, Draeger "requires a license" if it intends to continue to sell its products. The letter then quotes the language of 35 U.S.C. § 271, including the statement "whoever without authority **makes**, **uses**, **offers to sell**, or **sells** any patented invention ... infringes the patent." (*Id.* (double emphasis in original)) The letter concludes that My Health is "interested in reaching a direct, negotiated (and without litigation) licensing arrangement...." (*Id.*)

4. The letter was accompanied by a binder that contained: (1) a notice "Re: Infringement of the U.S. Patent No. 6,612,985;" (2) a copy of the '985 patent; and (3) a "Pre-filing Investigation Claim Chart" that explains on an element-by-element basis the allegedly infringing nature of the "Accused Product." (D.I. 27) The notice states that My Health "reserves all rights ... to seek damages anytime within the last six years," and warns that "You should not rely on any communication ... from My Health as a relinquishment of any of My Health's rights." (D.I. 27-1) The claim chart contains a

---

[1] Consistent with this statement, My Health filed complaints against at least 24 other companies alleging infringement of the '985 patent. (D.I. 1 at ¶ 13)

2

header on each page stating "Rule 408 confidential communication – subject to confidentiality agreement." (D.I. 27-3)

5. No one from Draeger responded to PLA or contacted My Health regarding the letter, the binder, or its contents before filing the declaratory judgment action. (D.I. 25 at 3) My Health seeks to dismiss the complaint for lack of subject matter jurisdiction on the grounds that Draeger has failed to identify actions sufficient to give rise to an actual case or controversy, as required by Article III of the U.S. Constitution.

6. **Standard**. The party asserting subject matter jurisdiction has the burden of proving its existence. *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). "Challenges to subject matter jurisdiction under Rule 12(b)(1) may be facial or factual." *Id.* (quoting *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009)). A facial attack contests the sufficiency of the pleadings, whereas a factual attack contests the sufficiency of jurisdictional facts. *Id.* In reviewing a facial attack, the court considers only the allegations in the complaint and any documents referenced in or attached to the complaint, in the light most favorable to the plaintiff. *Church of Universal Bhd. v. Farmington Twp. Supervisors*, 296 F. App'x 285, 288 (3d Cir. 2008). In contrast, when reviewing a factual attack, the court may weigh and consider evidence outside the pleadings. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). Finally, in a factual challenge, "no presumptive truthfulness attaches to plaintiffs' allegations." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977).

7. The Declaratory Judgment Act requires an actual controversy between the parties before a federal court may exercise jurisdiction. 28 U.S.C. § 2201(a). An actual controversy exists where "the facts alleged, under all the circumstances, show that there

is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Gas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

8. **Discussion**. If a plaintiff has "actually been charged with infringement of the patent, there is **necessarily**, a case or controversy" adequate to support declaratory judgment jurisdiction." *Cardinal Chem. Co. v. Morton Int'l*, 508 U.S. 83, 96 (1993) (emphasis in original); *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007) (explaining that an Article III case or controversy exists where "a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without a license"). Considering the "lenient legal standard" for declaratory judgment jurisdiction, the Federal Circuit considered it "implausible" to expect that a patentee seeking to avoid a declaratory judgment action "would identify specific claims, present claim charts, and explicitly allege infringement." *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362 (Fed. Cir. 2009). But that is exactly what My Health, through its agent, PLA, has done here.[2]

9. PLA sent Draeger a letter stating that its "legal team" believes the Infinity M300 system uses technology claimed in the '985 patent and, therefore, Draeger "requires a

---

[2] A corporation is "accountable for any acts committed by one of its agents within his actual or apparent scope of authority and while transacting corporate business." *In re Pers. & Bus. Ins. Agency*, 334 F.3d 239, 242–43 (3d Cir. 2003). The fact that PLA would not have been authorized to initiate any litigation against Draeger is irrelevant. There is no claim that PLA acted outside the scope of its authority for the acts it actually did take. Accordingly, those acts can be imputed to My Health.

4

license" if it intends to continue to sell its products, pursuant to 35 U.S.C. § 271 (sale of a patented invention without authority infringes the patent). (D.I. 27-4) PLA supported the infringement accusation with, among other things, a detailed and studied claim chart prepared with input from legal counsel. These same facts were sufficient to support subject matter jurisdiction in the Federal Circuit's seminal case on this issue. *See Sandisk*, 480 F.3d at 1382 (finding jurisdiction where defendant provided a "thorough infringement analysis" prepared by legal experts, stated that plaintiff's conduct infringed its patents, and claimed that plaintiff would need to pay a royalty for its infringing product).

10. PLA's letter also informed Draeger that My Health "has been enforcing its intellectual property rights," confirmed by the fact that My Health has filed complaints against at least 24 other companies alleging infringement of the '985 patent. (D.I. 1 at ¶ 13; D.I. 27-4) A patentee's prior enforcement litigation is a factor supporting jurisdiction where a patentee has directly asserted infringement allegations against a declaratory judgment plaintiff, as My Health has done here.[3] *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 901 (Fed. Cir. 2008).

11. My Health claims that its other enforcement activities are irrelevant because it "does not have a history of filing lawsuits against potential business partners with which it has entered into licensing negotiations." (D.I. 25 at 10) As evidence of its intent to not sue, My Health relies heavily on a statement in the letter that it is "interested in reaching a direct, negotiated (and **without litigation**) licensing arrangement." (*Id.* at 8 (emphasis

---

[3] *Panavise Products, Inc.*, on which My Health relies, is inapposite, because in that case, there was no direct pre-complaint communication between the patentee and the declaratory judgment plaintiff, and no definite or concrete evidence that the patentee actually knew of the potentially infringing product. (D.I. 25 at 10 (discussing *Panavise Products, Inc v. Nat'l Prods., Inc.*, 306 Fed. Appx. 570, 573 (Fed. Cir. 2009))).

in brief))  Even if this sentence could be read in the manner My Health asserts, that interpretation is undermined by My Health's clear reservation of its rights to sue in the same package of information.  Specifically, the notice accompanying the letter warns that "You should not rely on any communication … from My Health as a relinquishment of any of My Health's rights" to seek damages.  (D.I. 27-4)  Several other facts support a reasonable inference that My Health was considering litigation.  The claim chart is titled "Pre-filing Investigation Claim Chart," referencing the Rule 11 investigation conducted before filing a complaint.  (D.I. 27-3)  Every page of the claim chart is stamped with a header stating "Rule 408 Confidential Communication," referencing Fed. R. Civ. P. 408 which governs the confidentiality of settlement communications for legal claims.  (*Id.*)

12.  Regardless, a real controversy would exist between the parties even if My Health had unequivocally promised not to sue Draeger.  A "statement by a patent holder promising not to sue the plaintiff does not eliminate the justiciable controversy created by the patent holder's actions." *EchoStar Satellite LLC v. Finisar Corp.*, 515 F. Supp. 2d 447, 452 (D. Del. 2007); *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1284 (Fed. Cir. 2007) (declining to hold that a patentee's statement that it had "absolutely no plan whatsoever to sue" eliminates the controversy needed to maintain a declaratory judgment suit).

13.  Under the totality of these circumstances, it does not weigh against jurisdiction that Draeger did not engage in licensing negotiations before initiating a lawsuit or that My Health remains interested in a negotiated resolution.  "The possibility of negotiation is not a sufficient reason to refuse jurisdiction." *Sabert Corp. v. Waddington N. Am., Inc.*, 2007 WL 2705157, at *5 (D.N.J. Sept. 14, 2007) (finding

subject matter jurisdiction where the parties had not engaged in negotiations even though patentee offered); *Sandisk*, 480 F.3d at 1382 n. 3 ("[A] party to licensing negotiations is of course within its rights to terminate negotiations when it appears that they will be unproductive.").

14. Finally, the cases on which My Health relies are easily distinguished, because in those cases neither the defendant nor its agents directed any specific allegations of infringement toward the plaintiff before the plaintiff filed a declaratory judgment action. *See West Interactive Corp. v. First Data Resources, Inc.*, 972 F.2d 1295, 1297-98 (Fed. Cir. 1992) (finding no reasonable apprehension of a lawsuit where plaintiff heard through an unrelated third party that an employee working for the joint venture that held a non-exclusive license to the patent asserted that plaintiff was infringing the patent); *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1380-81 (Fed. Cir. 2010) (affirming dismissal for lack of subject matter jurisdiction where plaintiff made an improper "sub rosa" attempt to create jurisdiction by informally calling patentee's employees and asking them what actions the patentee might take under certain hypothetical scenarios if a product that had yet to enter the market was released). In contrast, PLA, as an agent of My Health, directly contacted Draeger and alleged infringement of a product currently on the market.

15. **Conclusion**. For the foregoing reasons, My Health's motion to dismiss for lack of subject matter jurisdiction (D.I. 24) is denied.

_____
United States District Judge